# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

CHRISTINE GILLAM, SEMETRICA SHADWICK, STEVEN PIKE, DENIS GETER, and ELWOOD BUMBRAY, *on behalf of themselves and all individuals similarly situated*,

    Plaintiffs,

v.

DAN KOETTING, ROCK HILL CONSULTING, LLC; GREEN GATE SERVICES, LLC; MARK KOETTING; REDONDO MANAGEMENT, LLC; CLEAR LOAN SOLUTIONS, LLC,

    Defendants.

Case No. 3:18-cv-00473-REP

## DECLARATION OF SHAWNA NEYRA

I, Shawna Neyra, affirm that I am over eighteen years old and otherwise qualified to testify to the matters set forth in this Declaration; I have knowledge of the facts herein; and if I am called as a witness, I will testify competently to these matters based on my knowledge:

1. I make this Declaration in support of the Motion to Dismiss Amended Complaint for Lack of Jurisdiction and the Motion to Dismiss Amended Complaint Pursuant to Rule 12(b)(6), filed by Green Gate Services, LLC and Clear Loan Solutions, LLC in the above-captioned matter.

2. I am an enrolled member of Big Lagoon Rancheria (the "Tribe"), a federally recognized Indian tribe located in Humboldt County, California.

3. I am an elected member of the Tribe's Business Council and have served as a member of the Business Council since 1999.

4. I serve as a member of the Board of Directors of Clear Loan Solutions, LLC ("Clear Loan").

5. I serve as a member of the Board of Directors of Green Gate Services, LLC ("Green Gate").

6. I have served on those Boards of Directors from the inception of Clear Loan and Green Gate in 2013 to the present.

1

7. I make this Declaration based upon my personal knowledge, including knowledge acquired during my service as a member of the Tribe's Business Council and the Boards of Directors of Clear Loan and Green Gate.

### Big Lagoon Rancheria

8. Big Lagoon Rancheria (the "Tribe") is a federally-recognized Indian tribe. The Tribe has been included on every list of federally-recognized Indian tribes since the United States Bureau of Indian Affairs began publishing such lists in 1979.

9. The Tribe's reservation is adjacent to Big Lagoon, a lagoon within a short walk of the Pacific Ocean in Humboldt County, California.

10. There are several sites of cultural significance within the reservation boundaries, including the Tribe's graveyard and locations used for hosting traditional Native American dances and ceremonies.

11. The Tribe's reservation is relatively small—only 22 acres—and the only access to the reservation is via a single two-lane road.

12. Because all contiguous lands are owned, controlled or managed by local and state governmental authorities, the Tribe has no possibility of expanding the physical size of its small reservation with contiguous land, contributing to the limitations on the Tribe's economic development opportunities.

13. On May 5, 1985, the Tribe adopted the Constitution of the Big Lagoon Rancheria as the supreme governing law of the Tribe "in order to establish a formal constitution and to promote our common welfare." A true and correct copy of the Constitution of the Big Lagoon Rancheria (the "Constitution") is attached hereto as Exhibit A.

14. The Constitution authorizes the voting members of the Tribe to elect a Business Council and provides that all rights and powers of the Tribe shall be exercised by the Business Council, including the specifically enumerated powers to "enact laws, statutes and code" and to "establish enterprises as branches or agencies of the tribal government and, otherwise to engage in business activities and projects which promote the economic well-being of the tribe and its members." *See* Ex. A, Art. VII, §§ 1-2; Art. V.

15. Beginning in the 1990s, the Tribe endeavored to establish a gaming facility on its reservation but was unable to do so. The Tribe currently does not have a gaming facility and its prospects of establishing a profitable gaming facility are limited.

16. In 2010, the Tribe's Business Council adopted the Big Lagoon Rancheria Limited Liability Company Code (the "LLC Code") for the purpose of providing economic development for the Tribe and its members. A true and correct copy of the LLC Code, amended and restated as of October 23, 2017, is attached hereto as Exhibit B.

17. The LLC Code authorizes the Tribe to form limited liability companies which are wholly owned by the Tribe. Ex. B, § 102(b) ("The purpose of this Code is to provide for economic development of the Big Lagoon Rancheria and its members by . . . authorizing the formation of wholly-owned Tribal business entities for managing the Tribe's economic activities separate from the general affairs of its Business Council, with the ability to enter into legally-binding contracts and commercial relationships without the need for formal Business Council action."); *see also* Ex. B, § 108. The LLC Code confirms that "[t]he companies organized and created under this Code shall be subject to this Code, and all other laws of the Tribe. By organizing and creating a company under this Code, the company and its Owners shall be considered to have entered into a consensual relationship with the Tribe and agree to be subject to the full extent of the Tribe's legislative, regulatory and adjudicatory jurisdiction." Ex. B, § 104.

18. On July 27, 2012, the Business Council adopted Resolution No. 2012-801 granting the Business Council the power and authority to pursue and implement economic and commercial development for the Tribe and its members. This resolution states "the desire of the Big Lagoon Rancheria Tribal Council to raise the standard of living and education for all Tribal members by entering into and taking advantage of business and commercial opportunities available to the Tribe." The resolution provides that the Tribe's Business Council "may create an [sic] operate subordinated economic entities and engage in business ventures with others through partnership, joint ventures, or other business arrangements." A true and correct copy of Resolution No. 2012-801 is attached hereto as Exhibit C.

## Formation of Clear Loan and Green Gate

19. In 2012, the Business Council decided to explore online lending as a possible means of gaining economic self-sufficiency for the Tribe. Because the Tribe did not have experience in the online lending industry, the Tribe hired a consultant to assist the Tribe in exploring, and ultimately entering into, the industry.

20. On January 7, 2013, pursuant to the authority granted in Resolution 2012-801, the Tribe's Business Council adopted Resolution No. 2013-104, which "created and established the tribally-owned online consumer lending business, Clear Loan Solutions." A true and correct copy of Resolution No. 2013-104, establishing Clear Loan, is attached hereto as Exhibit D.

21. The Chairman of the Tribe's Business Council, acting as organizer of Clear Loan, signed the Articles of Organization and Operating Agreement for Clear Loan.

22. The Articles of Organization and Operating Agreement of Clear Loan, amended and restated as of October 23, 2017, are attached hereto as Exhibits E and F, respectively.

23. On August 22, 2013, the Tribe's Business Council adopted Resolution 2013-806 adopting the Big Lagoon Rancheria Tribal Consumer Financial Services Regulatory Code (the "Regulatory Code") and establishing the Big Lagoon Rancheria Tribal Consumer

Financial Services Regulatory Authority (the "Regulatory Authority") to govern the Tribe's online consumer lending business program. A true and correct copy of Resolution No. 2013-806 is attached hereto as Exhibit G.

24. On October 22, 2013, the Business Council adopted Resolution No. 2013-1003 amending and restating the Big Lagoon Rancheria Tribal Consumer Financial Services Regulatory Code. True and correct copies of Resolution No. 2013-1003 and the Tribe's Regulatory Code, as amended and restated, are attached hereto as Exhibits H and I, respectively.

25. Resolution No. 2013-806 also established and directed staffing of the Tribe's Regulatory Authority, a governmental subdivision of the Tribe in "charge of the implementation of the Code and regulations of the Tribe relating to consumer financial services activities and associated licensing requirements." Ex. I, Regulatory Code, § 4.1.

26. On August 30, 2013, pursuant to the authority granted in Resolution 2012-801, the Tribe's Business Council adopted Resolution No. 2013-808, which "created and established the tribally-owned online consumer lending business, Green Gate Services." A true and correct copy of Resolution No. 2013-808, establishing Green Gate, is attached hereto as Exhibit J.

27. The Chairman of the Tribe's Business Council, acting as organizer of Green Gate, signed the Articles of Organization and Operating Agreement for Green Gate.

28. The Articles of Organization and Operating Agreement of Green Gate, amended and restated as of October 23, 2017, are attached hereto as Exhibits K and L, respectively.

29. The Articles of Organization for Clear Loan and Green Gate provide that "[i]n accordance with Section 931 of the Tribal LLC Code and unless the Business Council of the Tribe adopts a resolution specifically appointing individuals to be the members of the Board of Directors of the Tribal Entity, the members of the Business Council of the Tribe in office from time to time shall constitute the members of the Board of Directors of the Tribal Entity from time to time." Exs. E & K, Articles of Organization, Art. VI; see also Ex. B, LLC Code § 931; Exs. F & L, Operating Agreements § 7.2.

30. From their inception to the present, the members of the Boards of Directors of Clear Loan and Green Gate have been the members of the Business Council in office from time to time.

31. Additionally, the Chairperson of the Business Council has always acted as the Chairperson of the Board of Directors of Clear Loan and Green Gate.

32. The Tribe is the owner of both Clear Loan and Green Gate and is the sole shareholder in each enterprise. Exs. F & L, Operating Agreements, at Schedule A.

33. The Regulatory Code provides that "[p]rofits from consumer financial services shall be utilized and expended only for the following purposes: (1) To fund the Tribe's government operations or programs. (2) To provide for the public health and general

welfare of the Tribe and its members and visitors to the Tribal community. (3) To promote Tribal economic development and self-sufficiency. (4) To donate to charitable organizations." Ex. I, Regulatory Code, § 1.3(a).

## Revenues and Benefits to the Tribe from Clear Loan and Green Gate

34. During the period from 2013 through late 2017, Clear Loan and Green Gate conducted successful and profitable lending operations.

35. Consistent with the requirements of the Regulatory Code and their stated purposes of generating revenue for the Tribe, Clear Loan and Green Gate made material contributions to the Tribe's budget.

36. Clear Loan and Green Gate made distributions to the Tribe in its capacity as sole owner of both entities.

37. Including the distributions which the Tribe received from the California Revenue Sharing Trust Funds as Tribal revenue, the distributions the Tribe received from Clear Loan and Green Gate constituted 30% of the Tribe's general fund revenues in the years 2014 through 2017.

38. These distributions represented a significant source of income for the Tribe, which the Tribe relied upon.

39. During the period 2014 through 2017, the Tribe used these distributions to help fund:

- Governmental operations, such as salaries and office expenses for Tribal officers and staff; community development; public protection; public ways and facilities; garbage collection services; internet services; water pump services; street light services; and funding the Data Center;

- Services benefitting the general welfare of Tribal members, such as housing maintenances and repair services; homeowners' down payment assistance; educational grants for college and professional development; burial/funeral services; health and nutrition services; mental health and rehabilitation services; legal representation; and per capita payments;

- Other business opportunities which also promote economic self-sufficiency, such as owning and operating a historic hotel; developing two for-profit athletic clubs; owning and operating an office complex; purchasing undeveloped land; and exploring Indian gaming and other business development opportunities; and

- Contributions and donations to charitable causes which are important to the Tribe's values and efforts at cultural preservation, such as financially supporting a local community wellness center focused on serving Native Americans (whether or not members of the Tribe); assistance to abused native women, children and families;

efforts to improve Indian Child Welfare Act programs; sponsorship of youth activities in tutoring, sports teams, kayaking, and traditional canoeing; sponsorship of Indian cultural events; and funding Tribal historic preservation activities.

40. As a direct result of the Tribe's participation in the consumer lending services industry, the Tribe decided to construct and operate a Tribal Data Center on its reservation for the purpose of housing the servers which communicate with borrowers over the internet. The Tribe installed broadband fiber optic cables to the Tribal Data Center and then extended those cables to all of the residences on the reservation. As a result, the homes on the reservation which had previously been served by unreliable and slow satellite internet connections are now served by reliable broadband cable connections, thereby improving the standard of living for all residents of the reservation.

41. In October and November 2017, Clear Loan and Green Gate discontinued issuing new loans nationwide. Clear Loan and Green Gate continued servicing and collecting outstanding loans until May 2018. In mid-May 2018, Clear Loan and Green Gate discontinued in-house collections and forgave outstanding balances on all loans that had not been sold to third-parties.

42. Clear Loan and Green Gate are no longer operating businesses.

43. Even though Clear Loan and Green Gate have ceased business operations and are in the process of winding down, their financial contributions to the Tribe outlive their corporate lifecycles given the funding they provided the Tribe for the ventures described above.

44. The experience the Tribe has gained by the Business Council's adoption of the Regulatory Code and establishing the Regulatory Authority, and entry into the consumer financial services industry through Clear Loan and Green Gate has given the Tribe the confidence to seriously consider entering into other regulated businesses.

45. Additionally, because the Tribe now has a sophisticated Tribal Data Center, the Tribe is able to consider additional business opportunities outside of the Tribal online lending industry which could utilize the Tribal Data Center resources.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, as executed this 11th day of October, 2018 in McKinleyville, California.

*Shawna Neyra*
Shawna Neyra
Member, Business Council of Big Lagoon Rancheria
Member, Board of Directors of Clear Loan Solutions, LLC
Member, Board of Directors of Green Gate Services, LLC